[Civ. No. 25345. Second Dist., Div. One. Oct. 10, 1961.]

ALTHEA H. CAMPBELL, Appellant, v. CENTRAL LIFE INSURANCE COMPANY OF ILLINOIS (a Corporation) et al., Defendants; GEORGE BRUCE CAMPBELL et al., Respondents.

184

Everett Rauh for Appellant.

Moses A. Berman for Respondents.

WOOD, P. J.—In the first cause of action plaintiff sought to recover from defendant insurance company the proceeds of a life insurance policy issued on the life of her husband.

In a second cause of action plaintiff sought a declaration that the other defendants had no interest in the proceeds.

Defendant insurance company deposited the proceeds with the clerk of the court, and an order was made discharging the company from liability under the policy and required plaintiff and the children of decedent by a previous marriage (the children who are defendants herein) to interplead in the action.

Plaintiff alleged that she was entitled to the proceeds of the policy as the beneficiary named in a document entitled "Settlement Agreement," which document had been signed by the insured and had been received and accepted by the insurance company. The children alleged that they were entitled to the proceeds as the beneficiaries named in a later document referred to as a "Change of Beneficiary" form, which document was signed by the insured and sent to the company, but was returned for the signature of plaintiff. She did not sign the document. The children also alleged

that plaintiff had waived any interest in the policy by reason of a property settlement agreement in a divorce action, and that plaintiff was estopped, by reason of that agreement, to claim any interest in the proceeds of the policy. The children will be hereinafter referred to as the defendants.

In a nonjury trial judgment was in favor of defendants. Plaintiff appeals from the judgment.

Appellant contends that the evidence does not support certain findings or support the judgment; and that the court failed to make findings on material issues.

In April 1940, defendant insurance company issued a life insurance policy in the amount of $10,000 on the life of George B. Campbell (a physician). The beneficiaries named in the policy were: ''Gloria H. Campbell, Insured's wife, if living; otherwise to George B. Campbell and Gloria J. Campbell, Insured's children, share and share alike, or to the survivor.'' The policy provided, in part, that the insured ''. . . may from time to time change the beneficiary. . . .'' (Further details regarding the provision for change of beneficiary will be stated hereinafter.)

In September 1948, Dr. Campbell executed a document entitled ''Direction for Settlement,'' wherein he directed the insurance company to pay the proceeds of the policy to ''Gloria H. Campbell (insured's wife) if living . . . otherwise to the then living children born of the marriage of the insured and said Gloria H. Campbell in equal shares.''

On June 18, 1956, Dr. Campbell married plaintiff. On November 16, 1956, Dr. Campbell executed another document entitled ''Settlement Agreement,'' wherein he directed the insurance company to pay the proceeds of the policy to plaintiff. The document included the following provision: ''I [the insured] hereby expressly reserve full right, by my own act alone, to revoke this settlement agreement and to change the beneficiary designation.''

On December 27, 1956, Dr. Campbell and plaintiff separated, and on January 2, 1957, she commenced an action for a divorce. About March 29, 1957, they executed a property settlement agreement.

The property settlement agreement provided, among other things, as follows: That the parties desire to settle their respective property rights. The only community property of the parties consists of the earnings of the husband, ''which said earnings were expended principally upon debts and

obligations by him incurred prior to marriage and living expenses in which the wife claims no interest and an interest in furniture and furnishings assigned by wife to husband and by reason thereof a full disclosure and warranty thereof by either husband or wife is waived by them, and by each of them. The husband and wife do each forever waive any and all rights in and to the separate property of the other and does hereby sell, transfer, assign and convey to the other, any interest which he or she may have in the separate property of the other.'' Except as in this agreement otherwise provided, ''each party to this agreement does hereby release the other from any and all liabilities, debts or obligations, of every kind or character, heretofore or hereafter incurred, and from any and all claims and demands including all claims of either party upon the other for support and maintenance as wife or as husband, it being understood that this agreement is intended to settle the rights of the parties hereto in all respects.'' Each party hereto ''does hereby waive any and all right to inherit the estate of the other at his or her death, or to take property from the other by devise or bequest . . . or to claim any family allowance or probate homestead, or to act as administrator or administratrix of the estate of the other . . . or to act as executor or executrix under the Will of the other. . . .'' Each party hereto ''does hereby covenant and agree, on demand, to execute any other or further instruments necessary or convenient to carry out the provisions of this agreement.''

On April 9, 1957, Dr. Campbell sent a letter to the insurance company in which he requested that plaintiff's name be removed as the beneficiary of the policy and that his children, Gloria, George, and Kathleen (defendants) be named as beneficiaries.

On April 29, 1957, the insurance company sent a letter to Dr. Campbell acknowledging receipt of his letter of April 9, and enclosing a form for change of beneficiary.

On May 29, 1957, Dr. Campbell sent a letter to the insurance company in which he stated: ''I am attaching designation of beneficiary forms which have been signed by me and witnessed. Will you please see that this form is properly processed and attached to my policy which you now have in your possession?''

On June 7, 1957, the insurance company sent a letter to Dr. Campbell wherein it stated: ''Thank you for sending us your application for change of beneficiary. Since California

is a community property state, and your policy is for $10,000, the Company requires your wife's signature to the change. The form is enclosed. Please have it executed by Althea H. Campbell and return it. We shall then be pleased to make the desired change.''

On June 19, 1957, plaintiff obtained an interlocutory judgment of divorce.

On July 1, 1957, Dr. Campbell's attorney sent a letter to plaintiff's attorney enclosing the form which had been signed by Dr. Campbell and which had been returned to him by the insurance company. In the letter Dr. Campbell's attorney requested plaintiff's attorney to obtain plaintiff's signature on the form and to return the form to him.

On July 2, 1957, the company sent a letter to Dr. Campbell requesting him to return the executed form. On October 1, 1957, Dr. Campbell's attorney sent a letter to plaintiff's attorney requesting him to return the signed form.

Dr. Campbell died on January 18, 1958.

Mary Meyers, called as a witness by defendants, testified as follows: She was Dr. Campbell's business manager from 1951 until his death. She typed the letter which he sent to the insurance company on May 29, 1957, wherein he enclosed a designation of beneficiary form. The form referred to in the letter was ''a change of beneficiary form, making the beneficiary on the policy Dr. Campbell's three children in equal shares of one-third, and we had typed that information on, Doctor had signed it, and I witnessed his signature.'' When the form was returned by the company, she sent it, at Dr. Campbell's request, to his attorney with a memorandum requesting him to obtain plaintiff's signature thereon. In June, July, September, November, and December 1957, Dr. Campbell asked her if the form had been returned.

George B. Campbell (a defendant) testified as follows: About December 1, 1957, he had a conversation with Dr. Campbell regarding ''life insurance policies.'' In that conversation Dr. Campbell stated that ''he had changed the beneficiaries [of life insurance policies on his life] to we three children.''

Plaintiff testified as follows: She and Dr. Campbell were together on numerous occasions after the interlocutory judgment was entered, and on one occasion they went to Palm Springs and remained there overnight. In November, 1957, and on many other occasions, they talked about a reconciliation. He ''brought up'' that subject. In the early part of

August, 1957, she received from her attorney a document called, "a Change of Beneficiary form." She did not sign the document, but returned it to Dr. Campbell, who did not ask her to sign it and did not refer to it thereafter. She had a conversation with him wherein he said that he wanted her to have the policy. She did not recall whether that conversation was before or after June 20, 1957 (the date the interlocutory judgment was entered).

The court made some findings by referring to various paragraphs of the pleadings and then stating whether or not the allegations therein were true; and it made other findings by specifically stating the facts.

Some of the findings of the court were as follows: That "following the execution" of the property settlement agreement (in the divorce action), Dr. Campbell, by the letters of April 9 and May 29, 1957, submitted written notice to the insurance company of a change of beneficiary in a manner which complied with the terms of the insurance contract, and that said notice effected a change of beneficiary in favor of the defendants. The formal act of naming defendants as beneficiaries would have been completed prior to the death of Dr. Campbell except for the wrongful conduct of plaintiff in refusing to execute the change of beneficiary form. At all times subsequent to April 9, 1957 (the date the first letter was sent to the company), it was the intention of Dr. Campbell that defendants should be the beneficiaries of the policy. Plaintiff, by reason of the property settlement agreement, waived any community property interest she might have in the policy; and, by reason of that agreement, plaintiff is estopped to claim the proceeds of the policy.

Appellant contends that the evidence does not support the finding that Dr. Campbell effected a change of beneficiary in favor of the defendants. She argues that the only construction to be placed on the correspondence regarding a change of beneficiary is that Dr. Campbell never consummated a change of beneficiary, and that he abandoned his efforts to make such a change.

The policy provided, with respect to a change of beneficiary, as follows: "[T]he insured may from time to time change the beneficiary . . . . Every change must be made by written notice to the . . . home office accompanied by the policy for indorsement of the change thereon by the company, and unless so indorsed the change shall not take effect. . . . The insured may . . . without the consent of the

beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred upon the insured by this policy, unless otherwise provided by indorsement hereon.''

It thus appears that, according to the provisions of the policy, the insured might change the beneficiary by written notice to the company. (Another provision therein was that such a change would not take effect unless indorsed on the policy.) It also appears, according to a provision of the settlement agreement (attached to the policy) and under which plaintiff claims as beneficiary, that the insured reserved the right, ''by his own act alone,'' to change the beneficiary. It was established (1) that on April 9, 1957, the insured sent a letter to the company requesting the change of beneficiary, (2) that the company thereupon sent a change of beneficiary form to him, (3) that he completed the form by writing defendants' names thereon as beneficiaries, and he signed the form and on May 29, 1957, returned it to the company. It appears, however, that the company was desirous of having the signature of the insured's wife (plaintiff) on the form because ''California is a community property state.'' The company returned the form to the insured and asked him to have it signed by plaintiff. At that time, the divorce action was pending, and the insured's attorney sent the form (which had been executed by the insured) to plaintiff's attorney for the purpose of obtaining plaintiff's signature thereon. She did not sign it. Although she testified that she returned the form to the insured, there was evidence from which the court could infer that she did not return it, i.e., the secretary of the insured testified that over a period of several months the insured asked her if the form had been returned. It is apparent that the insurance company's interest in obtaining the signature of the wife (the plaintiff) was to protect itself against any claim by the wife that she had an interest in the policy by reason of the community property law of California. The property settlement agreement (in the divorce action) states in substance that there was no community property. The policy was issued about 16 years before the marriage, and there was no evidence that any insurance premium was paid after the marriage. The property settlement agreement did not refer specifically to the insurance policy, but the agreement did contain provisions to the effect that each party released the other party from all liabilities and claims and that they intended to settle their rights in all respects. It thus appears that since there was

no community property, the desire of the insurance company to have the wife's signature on the change of beneficiary as a protection against a claim by her based on community property rights, was of no practical significance. The act of the company in depositing the proceeds in court and obtaining an interpleader order indicates that the company was not contesting the asserted change of beneficiary—and particularly that it was not contesting such change on the ground that the formalities of its prescribed method for such a change were not followed. As shown above, the insured had the right under the provisions of the policy to change the beneficiary, and he reserved the right under the Settlement Agreement (under which plaintiff is claiming) to change the beneficiary by "his own act alone." On April 9 and May 29, 1957, the insured, acting alone, directed in writing a change of beneficiary. If the company had not raised the question as to the community rights of the wife, presumably the insured's acts with referenec to changing the beneficiary would have been recognized by the company as sufficient to comply with its prescribed formalities. As shown above, the fact is the wife did not have a community property interest in the policy. In any event, pursuant to the request of the company, the insured undertook to obtain the signature of the wife, and he did all that could reasonably be required of him in that respect. In *Pimentel* v. *Conselho Supremo, etc. Portugueza,* 6 Cal.2d 182 [57 P.2d 131], a question was whether there had been an effective change of beneficiary where the change had not been indorsed on the policy as required by a provision in the policy. In that case, after reference was made to the rule that the insured must follow substantially the company's method of changing a beneficiary, the court said (p. 188) : "We think that where the insurer is not contesting the change the rule [as to change of beneficiary] is not to be applied rigorously and where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected." In the present case the evidence supports the finding that the insured effected a change of beneficiary in favor of the defendants.

As above stated, appellant argues that the insured abandoned his efforts to make a change of beneficiary. Whether he abandoned such efforts was a question of fact for the de-

termination of the trial judge. It is implicit in the findings that he did not abandon his efforts. Such a finding is supported by the evidence.

 Appellant contends that the court erred in failing to make findings on material issues. She argues that the court was obligated to find favorably or unfavorably on all the statements of fact made in her pretrial statement. As above stated, the court made findings by reference to various paragraphs of the pleadings and by specific statements of fact. It was not necessary to make a specific finding as to each assertion in plaintiff's pretrial statement of alleged facts. In *Arsenian* v. *Meketarian*, 138 Cal.App.2d 627, it was said, at pages 632 and 633 [292 P.2d 293]: "It is not necessary to make specific findings as to each of several material issues where the findings taken as a whole, or construed together, clearly show that they include the court's conclusions upon the material issues. [Citation.] Special facts need not be detailed in the findings if a general finding necessarily embodies an implied finding of such special facts." In the present case the findings are sufficient to support the judgment.

In view of the above conclusions, it is not necessary to determine other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.